EDWARD P. BUTLER *et al. vs.* BOARD OF ALDERMEN OF PAWTUCKET.

PROVIDENCE—NOVEMBER 1, 1900.

PRESENT : Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Elections. Supervisors. City and Ward Committees. Mandamus. Construction of Statutes.*

Gen. Laws R. I. cap. 11, § 32, has extended the privilege of submitting lists of electors, from which supervisors of elections shall be selected by the board of aldermen of a city, to both the city and ward committees. Such power conferred upon a ward committee is not limited to cases where the city committee has neglected to present such list, but is co-extensive with the right of the city committee.

*Semble,* that the board of aldermen may select the supervisors in part from either list.

(2) *Mandamus.*

Where a board of aldermen selected supervisors of election from a list presented by the majority of a ward committee, such action was *prima*

*facie* lawful, and the question of fraud in the procuring of a signature of a member of the ward committee cannot be reached by *mandamus. Mandamus* does not lie to undo what has been done, nor to try a disputed title to office.

PETITION FOR A WRIT OF MANDAMUS. The facts sufficiently appear in the opinion. Heard on petition, and petition denied.

(1)    PER CURIAM. Under Pub. Laws cap. 920, § 16, 1891, supervisors were to be selected from a list presented by the town committee. Gen. Laws cap. 11, § 32, extends this provision in these words: "to be selected from a list of not less than six electors presented to said board of aldermen of the city or town council of the town, by the city, town, ward, or voting-district committee of the republican and democratic parties respectively."

The question is whether, under the present statute, the selection is still confined to the town or city committee, with power in the ward or district committee to submit a list only in case of failure of the general committee to do so, or whether each of these several committees may submit lists from which the board of aldermen may make a selection.

It is evident that some power of nomination is conferred upon a ward committee, and the court is of opinion that such power is not limited to cases of neglect of a city committee, because the list is not required to be presented before the meeting of the board of aldermen. Hence the ward committee would have no means of ascertaining such neglect until a time when it might be too late for them to convene to agree upon a list. It would be unreasonable to require them to make up a list and to be in attendance so as to provide for a neglect which might not occur.

This construction seems to be most reasonable. The ward committees would be most likely to know who would be proper persons for supervisors in their respective wards, and hence the extension of the act to allow a wider, and presumably better, selection by the aldermen. There is to be a list of names in one party. That list may be made up in

part by the city committee and in part by the ward committee, thus constituting, as a whole, the party list. We see no other way to give reasonable force to the words added to the statute, and we therefore so construe the act.

(2)    As the selection was made in this case from a list submitted by a majority of the members of the ward committee, as appears by the return, it was, *prima facie*, lawfully made. It was suggested in argument that a signature to said list was fraudulently procured. This question cannot be tried on this petition. *Mandamus* does not lie to undo what has been done, nor to try a disputed title to office.

The petition is denied.

*Charles E. Gorman*, for petitioners.

*Edward W. Blodgett*, City Solicitor of Pawtucket, and *Edward D. Bassett*, for respondents.